The court having taken time to consider, Chancellor Rutledge afterwards delivered the decree of the court;
The questions in this case are whether the paper writing in the bill referred to, signed P. Hamilton, now deceased, dated 1st May, 17'S4, disposing of certain parts of his estate in this state to the persons therein named, was or was not of an executory nature, and revocable, or whether it was not absolute and indefeasible ? And if revoca *92 ble, whether the instructions of Sept. 1791, did not abso-Xutoly revoke the former, at least as to such parts as had not been executed agreeable to the directions therein contained? As to its being cf a testamentary nature, although from some of the technical expressions, it might be said to embrace that idea, yet as the acts to be done by the persons, were to be executed as speedily as possible, and in the lifetime of Mr. Hamilton, it cannot be considered as a testament or will; nor is it a deed, because it wants some of the requisites essential to a deed. In fact it is nothing more than what Mr. H. intended it to be, viz : Instructions to his attornies. Viewing it then in that light, it cannot but be considered in its nature, as altogether execu-tory, and therefore countermandable or revocable. That Mr. H. looked upon it as revocable, appears upon the face of it; for at the beginning he calls it his instructions to his attornies, for their guide in conducting his concerns ; and desires them to be executed as speedily as may be.— He then proceeds to direct what acts they are to do, all of which being done, he concludes with requesting that they do mutually agree to collect and receive in the rest of his personal estate, and as they receive, each to render an account to the other, and mutually divide the same equally among them, share and share alike. As a further proof that he, and the defendants also, considered the paper in no other light than as instructions, they write to him on the subject of his affairs ; and he in his letters of July, 1788, and February, 1788, directs them what to do, and adds, to divide what they may receive as per instruc-lions. As a more convincing proof that he thought he had still a controuling power over the acts of the defendants, and to dispose of such parts of his estate (his debts particularly) as bad not been received; he by his instructions of Sept. 1791, directs his debts to be divided between his attornies, his three nieces, and the complainant, in equal shares, which instructions he accompanies with a letter to che defendants, to that effect, and by a letter of the aarne dale to com’plt. he says he lias wrote to his attornies,. *93 and of which they no doubt would communicate his mind and desires to him as per instructions by Mr. Tunno. Then for the first time the defendants take the alarm; and immediately after the receipt of the letter and these instructions, they conceive the first instructions to be irré-vocable, and have them put on record. What was their subsequent conduct r Did they acquaint the complainant with the contents of the new instructions? They did not. Did they remonstrate with their constituent on his change of sentiments, and set up a claim to that property, independent of his controul? We should suppose they did not. It is rather presumable that they seemed to acquiesce in conforming to the subsequent instructions, and kept him in the dark respecting their real intentions ; for if they had held the same language to him, which they now do to complainant, it is impossible he could have wrote the subsequent letters that he did to complainant in the years 1793-5 and 6; particularly that of 179'$, wherein he writes complainant that he hopes he will soon enjoy a seventh part of all his pecuniary property due here. There is a mystery in this business which ought to be developed. The defendants have carefully concealed the letters which were wrote to them by Mr. Hamilton, subsequent to July, 1788, and their answers thereto. They do not even pretend that they ever informed him that a division had taken place, which it was natural for them to have done. Such conduct was highly unbecoming towards their benefactor, and merits censure,-and-ought not to be countenanced or supported by the court. As therefore their claim is founded on the first instructions, it was incumbent on them to prove that they” had literally complied with them,to entitle themselves to the benefits thereof. So far as they were executed previous to the receipt of the new, and conformable to the directions of the first instructions,' those acts are undoubtedly good; but by making a division of the bonds, &c. instead of first collecting and receiving the money due on them, and then dividing it, they have totally deviated from their instructions. As there *94 fore the original bonds, &c. were still outstanding, and the. monies had not been received and divided, when the new? instructions were received. by them, we are of opinion, that the first instructions were thereby countermanded and revoked, and therefore decree that the. defendants do account for all such monies as they have received on account of the debts due their constituent, the late Paul Hamilton, deceased, subsequent to the receipt of the instructions of Sept’r. 1791, to ,be divided agreeably t© those instructions. Costs to be paid by defendants.